## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROY LAFLEUR**                                                    **CIVIL ACTION**

**VERSUS**                                                             **No. 10-363**

**CITY OF WESTWEGO, ET AL.**                                   **SECTION I**


### ORDER AND REASONS

Before the Court are motions[1] for summary judgment filed by defendants, Joe Peoples

("Peoples") and Westwego Police Chief Dwayne Munch ("Munch").  Plaintiff, Roy Lafleur,

opposes[2] the motions.  For the following reasons, defendants' motions for summary judgment

are **GRANTED**.


### *BACKGROUND*

Plaintiff claims that under color of law, Peoples and Munch deprived him of his

constitutional rights.  Specifically, plaintiff alleges that Peoples "intruded upon [plaintiff's]

residence, uninvited, without consent, and unlawfully" and "posed several poignant and

intimidating questions to an occupant of my residence. . ."[3]  Plaintiff alleges that "[t]he unlawful

visitation by Joe Peoples to plaintiff's residence was orchestrated to instill fear into all residents

of said residency."[4]  Peoples allegedly stated, "we would like to know more about Roy Lafleur."[5]

According to plaintiff's original complaint, Peoples's actions "caused emotional stress of

---

[1] R. Doc Nos. 82, 88.
[2] R. Doc. No. 13.
[3] R. Doc. No. 1, p.1 (emphasis omitted).
[4] R. Doc. No. 33, p.1.
[5] R. Doc. No. 1, p.2.

plaintiff and of the other occupant."[6]  Plaintiff claims that his "attempts by certified mail to Mr. Joe Peoples concerning the intimidating visit to my private residence were ignored by defendant."[7]  Plaintiff alleges that Peoples was an employee of the City of Westwego Police Department at the time of "said act."[8]

Plaintiff's complaint avers that he requested that Munch investigate Peoples's actions.[9] Plaintiff states that after he did not receive a response from Munch, plaintiff "wrote him about the same and other matters of public record and information."[10]

According to plaintiff's complaint, Munch subsequently "embarked on scare and harassment tactics upon plaintiff."[11]  Plaintiff alleges that on April 7, 2009, Munch "personally executed a traffic stop on plaintiff" and advised plaintiff that "he was now making his crusade personal" and that "any other forthcoming requests of operational information or records of the Westwego Police Department would certainly result in plaintiffs [sic] arrest."[12]

Plaintiff alleges that on October 8, 2009, Munch "ordered his officers to execute a traffic stop upon plaintiff" and instructed those officers "via radio communication to search plaintiff's vehicle."[13]  Plaintiff also alleges that such search was conducted "unlawfully and without owner-driver consent."[14]  According to plaintiff, such "unprovoked" acts "display[ed] a callous disregard for law and plaintiff's civil rights protected by law."[15]

Defendants have moved for summary judgment claiming that no genuine issues of material fact exist with respect to plaintiff's inability to meet his burden of proof against the

---

[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] R. Doc. No. 1, p.2.
[11] Id. (emphasis omitted).
[12] Id. (emphasis omitted).
[13] Id. (emphasis omitted).
[14] Id.
[15] Id.

defendants.  Peoples argues that plaintiff is unable to show that Peoples acted under color of law or that he conducted a warrantless intrusion into plaintiff's home.  Munch argues that plaintiff is unable to show that any of Munch's actions resulted in a violation of plaintiff's Fourth Amendment rights.

### STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co., 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may

not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id.

The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to

be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552

(1999).


## DISCUSSION

### I.    Plaintiff's claim against Peoples

In its earlier order, the Court construed plaintiff's complaint as asserting a 42 U.S.C. §

1983 claim against Peoples in his individual capacity.[16]  Section 1983 provides a claim against

anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State"

violates another's constitutional rights. 42 U.S.C. § 1983; Bustos v. Martini Club Inc., 599 F.3d

458, 464 (5th Cir. 2010).  "Two elements must be proved in order to recover under section 1983:

(1) deprivation of a constitutional right by a defendant, (2) acting under color of (state) law."

Herwald v. Schweiker, 658 F.2d 359, 363 n.5 (5th Cir. 1981).  Peoples asserts that plaintiff is

unable to prove either element.

####    a.   *Deprivation of a Constitutional Right*

Plaintiff has alleged that Peoples "intruded upon [plaintiff's] residence, uninvited,

without consent, and unlawfully."[17]  The Court previously observed that such allegation could be

construed as a violation of the Fourth Amendment of the U.S. Constitution.  "A warrantless

intrusion into an individual's home is presumptively unreasonable unless the person consents or

probable cause an exigent circumstances justify the encroachment." U.S. v. Jones, 239 F.3d 716,

---

[16] R. Doc. No. 30, p.5.
[17] R. Doc. No. 1, p.2 (emphasis omitted).

719 (5th Cir. 2001) (citations omitted).  However, Peoples has presented uncontested summary judgment evidence showing that no intrusion occurred.

Peoples admits that he visited the residence of Irene Dufrene ("Dufrene") on February 11, 2009 to inquire as to whether plaintiff actually resided there.[18]  He admits that he knocked on Dufrene's front door and when she did not answer, he proceeded down the driveway where she met him at the side door.[19]  According to Dufrene, the two of them had a conversation that lasted about five minutes:

> He rang the doorbell.  I went to the door, opened the door. He said, "Hey, Ms. Dufrene."  And I said, "Hey, how you doing, Joe?"  "Fine.  You?"  He said, "I'm here to talk about Roy Lafleur."  He said, "I want to know does he live here."  And I said "Yes, he does."  And he said, "That's what I want to know."  He said, "I just want to make sure that we don't have a riffraff going around Westwego," and he said, "Because we don't want a riffraff in Westwego."  That's what the conversation was about.  And I said, "Well, you don't have to worry."  I said, "He's a good man." I said, "He lives here with me."  So he said "okay" and he left.[20]

Dufrene confirms that at no point did she ask Peoples to leave.[21]  In addition, her testimony appears to support Peoples's assertion that "[a]t no point during the conversation did [he] enter Ms. Dufrene's home."[22]

Plaintiff offers no evidence to show that Peoples in fact entered his residence.  Based on the evidence presented by Peoples, it appears Peoples arrived at Dufrene's residence, knocked on the door, had a brief conversation with Dufrene, and then left.  Accordingly, because Peoples never entered the residence, the Court finds that plaintiff is unable to show that there was a warrantless intrusion into his home in violation of the Fourth Amendment. See Simmons v. City

---

[18] R. Doc. No. 82-3, p.1.
[19] Id. at p.2.
[20] Id. at p.12.
[21] Id. at p.13.
[22] Id. at p.2.

of Paris, Texas, 378 F.3d 476, 481 (5th Cir. 2004) (finding that claims against officers who had

not entered the residence must be dismissed because potential liability was based on plaintiff's

claim that the defendant officers had unreasonably remained in the residence).

     *b.  Acting Under Color of Law*

     The U.S. Fifth Circuit Court of Appeals has explained, "[a] person acts under color of

state law if he misuses power possessed by virtue of state law and made possible only because

the wrongdoer is clothed with the authority of state law.  Under 'color' of law means under

'pretense' of law." Bustos, 599 F.3d at 464 (citing Screws v. U.S., 325 U.S. 91, 111 (1945).

"[A]n act of an officer, not taken with authority or under cloak of authority, will not be

considered under color of state law 'simply because the individual, although pursuing private

aims, happens to be a state officer.' Id. at 464, n.26 (quoting Brown v. Miller, 631 F.2d 408, 411

(5th Cir. 1980)).  The Fifth Circuit has further instructed:

> Whether an officer is acting under color of state law does
> not depend on his on- or off-duty status at the time of the alleged
> violation.  Rather, the court must consider: (1) whether the officer
> misused or abused his official power, and (2) if there is a nexus
> between the victim, the improper conduct, and the officer's
> performance of official duties.

Id. at 464-65.

     Peoples submits affidavits from himself and Munch to support his assertion that he is

employed as a mechanic for the Westwego Police Department.[23]  At no time was he ever

commissioned as a police officer.[24]  In her deposition, Dufrene states that Peoples's visit

occurred at "about five-thirty or six o'clock in the afternoon."[25]  She confirms that she knew

---

[23] R. Doc. No. 82-3, p.1-3.
[24] Id.
[25] Id. at. p.13.

Peoples to be a mechanic for the police department and not a police officer.[26]  Plaintiff offers no summary judgment evidence to rebut any of these assertions.

Although state employment is generally sufficient to render a defendant a state actor, the U.S. Supreme Court has recognized that the existence of state action is dependent on the circumstances of the case. Polk County v. Dodson, 454 U.S. 312, 320 (1981) (finding no state action in the day-to-day activities of a public defender, even though he is a state employee). Based on the evidence proffered, it does not appear that Peoples is empowered with any official authority as a mechanic for the police department.  However, even if being a mechanic does confer some official authority, it is apparent that Peoples did not misuse or abuse such official power and there was no nexus between any allegedly improper conduct and the performance of his official duties.  There is no evidence to show that he asserted any official authority during his visit to Dufrene's residence.  Accordingly, this Court finds that plaintiff is unable to show that Peoples acted under color of law. See Bustos, 599 F.3d at 465 (finding that officers who were off-duty, were not in uniform, did not use an official weapon, and did not assert their authority as police officers were not acting under color of law).

The Court recognizes that claims against a private individual for engaging in a conspiracy with a state actor are cognizable in a § 1983 action.  See, e.g., Mills v. Criminal District Court #3, 837 F.2d 677, 679 (5th Cir. 1988).  However, even if the Court were to construe plaintiff's statements to have alleged the existence of a conspiracy between Peoples and Munch, plaintiff's allegations are wholly conclusory.  Conclusory allegations of conspiracy fail to state a § 1983 cause of action.  Small v. Dallas County, Texas, 170 Fed. App'x 943 (5th Cir. 2006); Russell v. Millsap, 781 F.2d 381, 383 (5th Cir. 1985); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992).

---

[26] Id. at p.9.

In his affidavit, Peoples declares that nobody, including Munch, directed or ordered him to visit Dufrene to inquire about plaintiff.[27]  Dufrene also confirms that nobody, including Peoples, ever told her that he had been sent to her home by Munch.[28]  Since plaintiff only offers unsubstantiated assertions in the form of his "suspicions" in opposition to Peoples's declarations,[29] the Court finds that plaintiff is unable to show that Peoples was acting in concert with state officials when visiting Dufrene's residence.

## II.    Plaintiff's claim against Munch

Plaintiff alleges that Munch, under color of law, "abused his authority by executing directing [sic] unlawful, and without justification of [sic] traffic stops to harass and intimidate plaintiff."[30]  Plaintiff first alleges that his rights were violated when Munch personally conducted a traffic stop on April 7, 2009.  Plaintiff then alleges his rights were violated when Munch ordered another officer to execute a traffic stop on October 8, 2009.  As previously stated, plaintiff must prove two elements in order to recover under section 1983: (1) deprivation of a constitutional right by a defendant, (2) acting under color of law. Herwald ,658 F.2d at 363 n.5. Munch does not dispute that he was under color of law when interacting with plaintiff. However, Munch asserts that plaintiff is unable to show that he deprived plaintiff of a constitutional right to be free from unreasonable search and seizure.

As the Fifth Circuit has explained:

> Traffic stops are considered seizures within the meaning of the Fourth Amendment.  To determine whether a seizure is reasonable, we consider (1) whether the officer's action was justified at its inception, and (2) whether the officer's subsequent

---

[27] Id. at p.2.  Munch also declares that he "did not direct, order, or suggest that Joe Peoples visit the home of Irene Dufrene…on February 11, 2009, or any time prior to said date." Id. at p.3.
[28] R. Doc. No. 82-3, at p.16.
[29] Id. at 27-28.
[30] R. Doc. No. 33.

> actions were reasonably related in scope to the circumstances that justified the stop.
>
> For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. Pursuant to a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation. The "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop . . . .

U.S. v. Banuelos-Romero, 597 F.3d 763, 766 (5th Cir. 2010); see also Whren v. U.S., 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

Munch submits an affidavit attesting that on April 7, 2009, "[he] observed a vehicle travel in excess of the speed limit and fail to come to a complete stop at a STOP sign within the city limits of Westwego."[31] Munch conducted a traffic stop on the vehicle driven by plaintiff and advised him of his traffic violations.[32] Munch gave plaintiff a warning regarding his driving, but did not issue a traffic citation.[33] Plaintiff offers no summary judgment evidence contesting these assertions.[34]

Munch's observation of plaintiff's traffic violation justified his decision to conduct a traffic stop on plaintiff's automobile on April 7, 2009. Accordingly, the Court finds that Munch's seizure of plaintiff was reasonable and did not violate plaintiff's Fourth Amendment rights.

To the extent plaintiff appears to claim that his rights were deprived when Munch threatened him during the traffic stop, the allegations fail to state a claim upon which relief may

---

[31] R. Doc. No. 88-4, p.1.

[32] Id.

[33] Id.

[34] To the extent plaintiff appears to argue that the traffic stop was pretextual, the Supreme Court has stated that it is "unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." Whren, 517 U.S. at 813.

be granted.  Plaintiff claims that Munch threatened to arrest him if he continued to seek public

records.  In <u>Norwood v. City of Hammond</u>, 2003 WL 1090253 at *2 (E.D. La. Mar. 11, 2003),

the court faced a very similar scenario in which plaintiff brought a lawsuit pursuant to § 1983

claiming that the defendant threatened her when she made a public records request.  The court

stated:

> Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control…Moreover, even if [plaintiff's] public records request was protected by the United States Constitution, the conduct she alleges [defendant] committed does not rise to the level of an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Courts in this jurisdiction have consistently held that claims of mere threatening language or gestures of a state official do not, even if true, amount to constitutional violations.  Citizens do not have a constitutional right to courteous treatment by the State. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983.

<u>Norwood</u>, 2003 WL 1090253 at *2 (citations and quotation marks omitted).  Accordingly, the

Court finds that plaintiff is unable to show that Munch deprived plaintiff of a constitutional right

on April 7, 2009.

With respect to the traffic stop on October 8, 2009, Munch admits that he ordered his

officers to commence a traffic stop on plaintiff's vehicle.[35]  Munch asserts that "[he] received a

phone call from a citizen of Westwego whom I know to be reliable stating that he witnessed

plaintiff exiting a convenience store and driving away from the convenience store with what

appeared to be an open container of alcohol in a paper bag."[36]  Munch instructed his officers via

radio dispatch to be on the lookout for plaintiff's vehicle.[37]  Upon seeing a vehicle matching the

---

[35] R. Doc. No. 88-4, p.2.
[36] <u>Id.</u>
[37] <u>Id.</u>

description provided in the dispatch, and traveling in the direction provided in the dispatch, Sergeant Douglas Duke ("Duke") commenced a traffic stop.[38]  Duke then informed Munch via radio dispatch that he spotted no open container of alcohol and that plaintiff did not appear intoxicated.[39]  Plaintiff offers no summary judgment evidence contesting these assertions.

Although Munch did not execute the traffic stop, himself, Munch may still be held liable if the traffic stop that he ordered caused a constitutional deprivation.  See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir.1992), cert. denied, 508 U.S. 951 (1993) ("Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries.").  The question, therefore, is whether the seizure of plaintiff's automobile deprived plaintiff of his Fourth Amendment rights.  With respect to investigative vehicle stops based on an informant's tip, the Fifth Circuit has explained:

> An investigative vehicle stop is permissible under *Terry* only when the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.  An informant's tip may, in certain cases, provide reasonable suspicion.  This will depend on various factors, including: the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

U.S. v. Martinez, 486 F.3d 855, 861 (5th Cir. 2007) (citation and quotation marks omitted).

To establish reasonable suspicion, "[t]he officer , of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.  The Fourth Amendment requires some minimal level of objective justification for making the stop.  That

---

[38] Id. at p.20.
[39] Id. at p.2.

level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." U.S. v. Sokolow, 490 U.S. 1, 7 (1989).

Munch attests that the tip came from someone he knew to be reliable. U.S. v. Lopez-Gonzalez, 916 F.2d 1011, 1014 (tips from known informants are more likely to be credible and are thus entitled to greater weight in the *Terry* stop reasonable suspicion analysis) (citing Adams v. Williams, 407 U.S. 143, 146).  Munch also attests that the tip specified the type of potential criminal wrongdoing, the identity of the person committing the wrongdoing, the type of vehicle, and the direction the vehicle was heading.  Before stopping the vehicle, Duke verified the information in the tip by attesting that he saw a vehicle matching the description provided in the tip and the vehicle direction provided in the tip.  In addition, the tip concerned an active activity. Taken together, these facts establish reasonable suspicion that plaintiff was operating a motor vehicle with an open container of alcohol.  Therefore, an investigative vehicle stop was permissible and did not violate plaintiff's Fourth Amendment Rights.

Plaintiff also alleges that an illegal search was conducted on his vehicle without his consent.  Munch was not present at the scene of the alleged search.  Accordingly, in order for Munch to be held Munch, plaintiff must show that Munch affirmatively participated in acts that caused constitutional deprivations or implemented unconstitutional policies that causally resulted in plaintiff's injuries. See Mouille, 977 F.2d at 929.  Whether or not the alleged search occurred, both Munch and Duke attest that Munch did not order a search of plaintiff's vehicle either before or during the traffic stop.  Since plaintiff has offered no evidence to show that Munch otherwise affirmatively participated in the alleged unconstitutional search or implemented unconstitutional policies, plaintiff's claim that Munch violated his Fourth Amendment rights must fail.

**III.     Plaintiff's procedural objections**

In opposition to defendants' motions for summary judgment, plaintiff alleges several complaints regarding procedural issues.  First, plaintiff claims that he has received no discovery following his several requests for production from Munch regarding the phone call that Munch asserts that he received.[40]  A review of the record shows two instances where plaintiff requested such information.  This first instance appears as an attachment to plaintiff's motion to compel.[41]  However, this motion to compel was denied.[42]  The second instance appears in a letter addressed to Munch, stylized as "interrogatories."[43]  Since service of this discovery request did not allow for sufficient time to complete the discovery within the Court's deadline, the "interrogatories" were stricken as untimely.[44]  The Court additionally notes that plaintiff has not filed a motion seeking additional time to obtain discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.  Accordingly, the Court finds plaintiff's first procedural complaint meritless.

Second, plaintiff argues that summary judgment is inappropriate at this time because there is still a motion to compel pending before the Court and outstanding interrogatories.  The Court finds this argument meritless.  The record shows that a ruling has been entered with respect to both of plaintiff's motions to compel.[45]  In addition, the only unanswered interrogatories shown in the record are those that were stricken as untimely.[46]

Finally, plaintiff claims that copies of the affidavits attached to defendants' motions for summary judgment were not provided to him prior to the filing of their motions.[47]  In addition,

---

[40] R. Doc. No. 99, p.2.
[41] R. Doc. No. 74 ("Further Dwayne Munch is to produce all records regarding the phone calls received as outlined in his answer regarding the second traffic stop.  The phone records are to be produced and identified factually to telephone companies, be in Verizon, AT&T or any other communication company." (emphasis omitted)).
[42] R. Doc. No. 94.
[43] R. Doc. No. 96-3, p.4 ("Please provide the following in regard to such stop, NAME OF PERSON CALLING, ADDRESS, TELEPHONE NO. [sic] TIME OF CALL, TRANSCRIPT OF CONVERSATION IN CALL, TELEPHONE CO [sic] PROVIDING CALL AND ALL INFORMATION REGARDING SUCH CALL[.]").
[44] R. Doc. No. 100.
[45] R. Doc. No. 94.
[46] R. Doc. No. 100.
[47] R. Doc. No. 87, p.2.

plaintiff claims that the excerpted deposition transcripts attached as exhibits to the motions for summary judgment provided a skewed representation of the testimony.[48]  The Court finds that plaintiff's final claims are also meritless.  The Federal Rules of Civil Procedure do not entitle plaintiff to view the defendants' affidavits before they are filed with their motions for summary judgment.  Furthermore, plaintiff has made no showing as to how the excerpts attached to the motions misrepresented the deposition testimony contained within.

### CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the defendants' motions for summary judgment are **GRANTED** and plaintiff's claims against defendants, Joe Peoples and Dwayne Munch, are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 28, 2011.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[48] Id.